(iii)  additional reviews of plans and specifications: fee shall be based upon the actual time spent by Landlord's architect in reviewing plans and/or specifications at the rate of $150 per hour;

(iv)  notwithstanding the foregoing, if Tenant's plans and specifications are to be reviewed by Landlord's structural engineer, then the fee for any review by Landlord's structural engineer shall be based upon the actual time spent by Landlord's structural engineer in reviewing plans and/or specifications at the rate of $150 per hour.

Landlord shall not be in any way responsible or liable with respect to the accuracy, sufficiency, or feasibility of any of Tenant's drawings, plans or specifications, and Tenant shall be totally responsible for same.

5.  Tenant is required to contract with and retain Rolf Jensen & Associates in connection with the submittal to and review of Tenant's plans and specifications by Clark County.

6.  Tenant is required to contract with and retain a consulting firm approved by Landlord and specializing in retail property compliance with Title III of the Americans With Disabilities Act of 1990, 42 USC 12101, et seq., and its implementing regulations, 28 C.F.R., part 36, and 49 C.F.R. parts 37 and 38 (the "ADA"); such firm shall be retained to advise Tenant in connection with the preparation of all of Tenant's plans and specifications for Tenant's Work and shall be retained for periodic on-site inspections of Tenant's Work during the course of Tenant's construction and for an on-site inspection following Tenant's completion of construction. Copies of such firm's plan reviews and inspection reports shall be submitted to Landlord promptly after Tenant's receipt thereof.

## SECTION V.  PROCEDURE, SCHEDULES AND OBLIGATIONS FOR THE CONSTRUCTION OF THE LEASED PREMISES BY TENANT.

A.  Commencement of Construction

1.  Tenant shall commence construction of leasehold improvements in time to open by the required date in the Lease for Tenant's initial opening in the Leased Premises.

B.  General Requirements

1.  Prior to construction, Tenant shall be responsible for coordinating with Landlord to devise a construction schedule and shall satisfy all prerequisites prior to the start of Tenant's construction as set forth in the Construction Criteria.

2.  Tenant shall engage the services of such bondable, State and Clark County licensed Union contractors who will work in harmony with Landlord's contractors and the contractors employed by the other tenants so that there shall be no labor disputes which would interfere with the operation, construction and completion of the Retail Area or with any work being carried out therein.

3.  Tenant's Work shall comply in all respects with applicable Federal, State, County and/or City statutes, ordinances, regulations, laws and codes. All required building and other permits in connection with the construction and completion of Tenant's Work for the Leased Premises shall be obtained and paid for by Tenant. Landlord's review of Tenant's drawings and specifications shall be for the purpose of ascertaining compliance with the requirements of this Lease and Landlord's requirements, and shall in no event extend to any confirmation or authorization, express or implied, that Tenant's drawings and specifications have been prepared in accordance with the requirements of applicable laws, codes, ordinances and regulations, and Tenant shall be solely responsible with respect to all necessary compliance with such laws, codes, ordinances and regulations for Tenant's Work.

In particular, and without limitation, Tenant shall at all times comply with and shall cause its contractors and subcontractors to comply with Title III of the Americans with Disabilities Act of 1990, 42 USC 12101, et seq., and its implementing regulations, 28 C.F.R. part 36, and 49 C.F.R. parts 37 and 38 (the "ADA"). All modifications or improvements made in connection with Tenant's Work for the Leased Premises shall be made in compliance with the ADA. Tenant shall assume full liability for the compliance and non-compliance with the ADA with respect to the Leased Premises by it, its contractors and subcontractors. If a lawsuit or other action is brought against Landlord by any individual or other entity, including, but not limited to, the United States Department of Justice, as a result of any non-compliance with the ADA, whether alleged or actual, by Tenant, its contractors or subcontractors, Tenant agrees to indemnify and hold harmless Landlord for the cost of defending such suit or action, and any resulting liability therefrom.

In addition, Tenant covenants and agrees, pursuant to the Nevada Revised Statutes ("NRS") 108.2403, to record a notice of posted security with the county recorder for Clark County and to properly either (i) establish a construction disbursement account serviced by a "construction control" and properly fund same or (ii) obtain and record a surety bond which satisfies the requirements of NRS 108.2415.

Exhibit B, page 6
Philippe Plein/Crystals/05/18/09

Tenant shall be solely responsible for providing Tenant's architect, general contractor, engineers and consultants with up-to-date plans and specifications for Tenant's Work approved by Landlord and by the governmental authorities with jurisdiction.

4.  Tenant shall cause its contractors to provide warranties for not less than one year against defects in workmanship, materials and equipment.

5.  Tenant's Work shall at all times and from time to time be subject to the inspection of Landlord, its consultants, and its supervisory personnel.

C.  Landlord's Right to Perform Work

1.  Landlord shall have the right to perform, on behalf of and for the account of Tenant, subject to reimbursement of the cost thereof by Tenant, any and all of Tenant's Work which Landlord determines in its sole discretion should be performed immediately and on an emergency basis for the best interest of the Development, including without limitation, work which pertains to structural components, mechanical, sprinkler and general utility systems, roofing and removal of unduly accumulated construction material and debris.

D.  Temporary Facilities During Construction

1.  Tenant shall pay for all temporary utility facilities, and the removal of debris in connection with the demolition and/or construction of the Leased Premises as described in the Construction Criteria. Storage of Tenant's contractors' construction material, tools, equipment and debris shall be confined to the Leased Premises and in areas which may be designated for such purposes by Landlord. In no event shall any material or debris be stored in the service or exit corridors. Except for temporary electric service, any common area or Landlord systems or facilities providing utilities (including without limitation chilled water) to the Leased Premises are not anticipated to be operational sooner than one hundred eighty (180) days prior to the Opening.

2.  During construction, Landlord may provide temporary electrical service in an area designated by Landlord as described in the Construction Criteria. In the event that the Leased Premises presently contain a metered electrical service, Tenant shall utilize the existing service and reimburse Landlord on the metered basis.

3.  During initial construction, Tenant fixturing and merchandise stocking, Tenant shall strictly comply with Landlord's directives for construction debris and waste removal. Landlord may designate particular contractors to provide such services at Tenant's sole cost and expense. At any time, as determined by Landlord, Landlord may require Tenant to assume responsibility therefor. In any event, all such work shall be performed by contractors approved by Landlord.

E.  Construction Completion

1.  Prior to Tenant's opening, Tenant shall provide to Landlord and Landlord's representative: a certificate of occupancy for the Leased Premises, "as-built" drawings certified by Tenant's architect, final unconditional lien waivers from all of Tenant's contractors and materialmen performing Tenant's Work, and a letter from Tenant's Architect certifying that Tenant's Work has been satisfactorily completed in compliance with the Landlord Approved Working Drawings. Within thirty (30) days after Tenant's opening for business in the Leased Premises, Tenant's general contractor shall: provide Landlord and Landlord's representative with three (3) copies of certified air balance reports; provide Landlord and Landlord's representative with all LEED documentation required by Landlord; provide Landlord and Landlord's representative with a completed punch list signed by Tenant's general contractor; request in writing that Landlord return any construction deposit held by Landlord and Landlord's representative; and provide Landlord and Landlord's representative with a final certificate of occupancy if Tenant shall have been permitted to initially open for business with a temporary certificate of occupancy.

F.  Payments by Tenant

1.  Tenant shall pay Landlord all sums due Landlord for items of work performed or expenses incurred by Landlord on behalf of Tenant within ten (10) days after receipt by Tenant of a statement therefor from Landlord. Such items of work and expenses incurred include, but are not necessarily limited to, the following:

    a.  All items called for as Tenant's payment obligations in this Exhibit B or the Construction Criteria.

    b.  Tenant shall be obligated to pay to Landlord Tenant's proportionate share of costs and expenses incurred by Landlord in arranging for a final cleaning of and debris removal from the common areas and vacant premises in preparation for the initial opening of the Retail Area.

Exhibit B, page 7
Philippe Plein/Crystals/05/18/09

G.    Insurance

    1.    Tenant shall secure, pay for and maintain, or cause its contractor(s) to secure, pay for and maintain during construction and fixturing work within the Leased Premises, all of the insurance policies required herein, in the amounts as set forth below, and such insurance as may from time to time be required from city, county, state or federal laws, codes, regulations or authorities, together with such other insurance as is reasonably necessary or appropriate under the circumstances. Tenant shall not permit its Contractor(s) to commence any work until all required insurance has been obtained and certificates of such insurance have been delivered to Landlord.

    2.    Tenant's general contractor's and subcontractors' required minimum coverages and limits of liability shall meet the insurance requirements set forth in the Design and Construction Manual.

The insurance required shall be in addition to any and all insurance required to be procured by Tenant pursuant to Section 11.01 of the Lease to which this Exhibit is attached.

[End of text of Standard Construction Exhibit]

# CRYSTALS

### EXHIBIT C
### CENTRAL CHILLED WATER SUPPLY SYSTEM

The Leased Premises shall be connected to a closed loop chilled water supply and return system (the "Central Chilled Water Supply System").

The Central Chilled Water Supply System will be installed by Landlord on behalf of Tenant for the charge in the Initial Reimbursement Charge set forth below. Tenant shall purchase and install a Fan Coil Unit for the Leased Premises which shall meet Landlord's specifications.

Landlord will provide valved chilled water supply and return pipes within or in proximity to the Leased Premises.

Tenant shall initially design and construct all ventilating and air conditioning systems within or directly related to its Leased Premises proceeding from the chilled water pipe stubs, all in accordance with Landlord's requirements and approval.

### A.    Tenant to Reimburse Landlord

Tenant shall pay to Landlord an Initial Reimbursement Charge of Five and 00/100ths Dollars ($5.00) per square foot of floor area in the Leased Premises within ten (10) days after delivery of Landlord's invoice. Landlord's ongoing charge for said Central Chilled Water Supply System shall be determined from the following provisions, and shall be due and payable within ten (10) days after Tenant has been invoiced for such amount by Landlord.

### B.    Operating Costs and Expenses

From and after the date Tenant connects to Landlord's Central Chilled Water Supply System and same is operational, or from and after Tenant's Lease Term Commencement Date, whichever shall be first to occur, Tenant agrees to pay Landlord an amount, determined in the manner hereinafter provided. Said amount shall include Tenant's share of all costs and expenses incurred by Landlord in connection with said system, including but not limited to the costs and charges for operation, administration, electricity, gas, insurance, repairs, replacement, maintenance and property taxes.

The annual amount, hereinafter termed Annual Chilled Water Charge or "Annual CW Charge," will not include costs incurred by Tenant for maintenance or operation of equipment installed by Tenant.

The base Annual CW Charge is Four and 00/100ths Dollars ($4.00) per square foot floor area of the Leased Premises and shall be paid by Tenant to Landlord and subject to adjustment in accordance with the following Section 1.

Section 2 provides the basis for adjustment to the Annual CW Charge rate if Tenant's design load exceeds the Landlord's base standards.

Section 3 provides the basis for adjustment to the Annual CW Charge rate for increases to the operating variables.

1.    Method for Developing Annual CW Charge

a.    For the purpose hereof, the term "Base Unit Rate" shall be Four and 00/100ths Dollars ($4.00) per square foot of floor area in the Leased Premises.

b.    The term "Actual Unit Rate" shall be the rate after the Base Unit Rate has been adjusted as provided under Section 2 hereof.

c.    The Actual Unit Rate is then multiplied by the total square foot floor area of the premises. The product is the Annual CW Charge which shall be divided into twelve (12) equal monthly installments hereinafter designed as the Monthly CW Charge.

d.    The Monthly CW Charge may be adjusted as provided by Section 3 hereof.

2.    Design Load Adjustment

a.    The base unit rate for CW service has been developed in part from the Design Criteria which also includes a maximum heat producing load of 45 BTU per hour per square foot or 13 watts per square foot for air conditioning, except for food and beverage tenants for which the base unit rate for CW service has been developed in part from the Design Criteria which includes a maximum heat producing load of 53 BTU per hour per square foot or 15.5 watts per square foot for air conditioning.

Exhibit C, page 1<br>Philippe Plein/Crystals/05/18/09

The Base Unit Rate shall be increased by two percent (2%) or the fraction thereof for each watt per square foot or fraction thereof in excess of the maximum watts per square foot, all as determined by Landlord's Engineer.

b. The Actual Unit Rate shall initially be determined by inspection of Tenant's Working Drawings. Landlord shall have the right to inspect Tenant's premises, and in the event "As-Built" heat producing equipment exceeds loads indicated on initial Working Drawings, Landlord will adjust Actual Unit Rate on the basis of the above formula.

3. Operating Expense Adjustment

    a. The Base Unit Rate for CW has been developed as follows:

        i. Electrical Energy: An average unit cost of electricity per kilowatt hour, including energy charge, demand charge, fuel adjustments and taxes, from the electric service provider for the Retail Area in effect as of September of 2006.

        ii. All Other Expenses: All costs and expenses for operation, administration, insurance, repairs, replacement, maintenance and property taxes accrued to said system, as estimated by Landlord as of September of 2006.

    b. The CW Charge shall be adjusted from time to time in accordance with the following provisions:

        i. Eighty percent (80%) of the Actual Unit Rate shall be increased by a percentage equal to the percentage increase in the previously defined average cost of electrical power per kilowatt hour.

        ii. Twenty percent (20%) of the Actual Unit Rate shall be increased during each annual period by a percentage equal to the percentage increase from the base period of the "Consumer Price Index for All Urban Consumers (1982-84 = 100), U.S. City Average, All Items," published by the United States Department of Labor, Bureau of Statistics.

        iii. Landlord shall have the right to adjust retroactively and increase CW charges for preceding periods. The adjusted Actual Unit Rate shall become the applicable rate until further adjusted by Landlord.

# EXHIBIT 2

# EXHIBIT 2

# GUARANTY

Annexed to and forming a part of Lease dated July 16, 2009 by and between THE CRYSTALS AT CITYCENTER, LLC, as Landlord, and ELYSIUM RESORTS, INC., as Tenant.

The undersigned, JACKIE ROBINSON, a married individual (hereinafter sometimes referred to as the "Guarantor" or "Guarantor(s)"), whose address is 6325 Harrison Drive #1, Las Vegas, Nevada 89120, in consideration of the leasing of the Leased Premises described in the annexed Lease ("Lease") to the above named Tenant ("Tenant"), does hereby covenant and agree as follows:

A. The undersigned does hereby absolutely, unconditionally and irrevocably guarantee the full, faithful and timely payment and performance by Tenant of all of the payments, covenants and other obligations of Tenant under or pursuant to the Lease. If Tenant shall default at any time in the payment of any Rent or any other sums, costs or charges whatsoever, or in the performance of any of the other covenants and obligations of Tenant, under or pursuant to the Lease, then the undersigned, at its expense, shall on demand of said Landlord ("Landlord") fully and promptly, and well and truly, pay all Rent, sums, costs and charges to be paid by Tenant, and perform all the other covenants and obligations to be performed by Tenant, under or pursuant to the Lease, and in addition shall on Landlord's demand pay to Landlord any and all sums due to Landlord, including (without limitation) all interest on past due obligations of Tenant, costs advanced by Landlord, and damages and all expenses (including attorneys' fees and litigation costs), that may arise in consequence of Tenant's default. The undersigned hereby waives all requirements of notice of the acceptance of this Guaranty and all requirements of notice of breach or non-performance by Tenant.

B. The obligations of the undersigned hereunder are independent of, and may exceed, the obligations of Tenant. A separate action or actions may, at Landlord's option, be brought and prosecuted against the undersigned, whether or not any action is first or subsequently brought against Tenant, or whether or not Tenant is joined in any such action, and the undersigned may be joined in any action or proceeding commenced by Landlord against Tenant arising out of, in connection with or based upon the Lease. The undersigned waives any right to require Landlord to proceed against Tenant or pursue any other remedy in Landlord's power whatsoever, any right to complain of delay in the enforcement of Landlord's rights under the Lease, and any demand by Landlord and/or prior action by Landlord of any nature whatsoever against Tenant, or otherwise.

C. This Guaranty shall remain and continue in full force and effect and shall not be discharged in whole or in part notwithstanding (whether prior or subsequent to the execution hereof) any alteration, renewal, extension, modification, amendment or assignment of, or subletting, concession, franchising, licensing or permitting under, the Lease. Without limiting the foregoing, this Guaranty shall be applicable to any obligations of Tenant arising in connection with a termination of the Lease, whether voluntary or otherwise. The undersigned hereby waives notices of any of the foregoing, and agrees that the liability of the undersigned hereunder shall be based upon the obligations of Tenant set forth in the Lease as the same may be altered, renewed, extended, modified, amended or assigned. For the purpose of this Guaranty and the obligations and liabilities of the undersigned hereunder, "Tenant" shall be deemed to include any and all concessionaires, licensees, franchisees, department operators, assignees, subtenants, permittees or others directly or indirectly operating or conducting a business in or from the Leased Premises, as fully as if any of the same were the named Tenant under the Lease.

D. The undersigned's obligations hereunder shall remain fully binding although Landlord may have waived one or more defaults by Tenant, extended the time of performance by Tenant, released, returned or misapplied other collateral at any time given as security for Tenant's obligations (including other guaranties) and/or released Tenant from the performance of its obligations under the Lease or terminated the Lease.

E. This Guaranty shall remain in full force and effect notwithstanding the institution by or against Tenant, of bankruptcy, reorganization, readjustment, receivership or insolvency

proceedings of any nature, or the disaffirmance of the Lease in any such proceedings or otherwise.

F.      If this Guaranty is signed by more than one party, or if more than one Guaranty shall be given as security for the performance of Tenant's obligations under the Lease, then the obligations of such parties and any other guarantors shall be joint and several, and the release of one of such guarantors shall not release any other of such guarantors.

G.      This Guaranty shall be applicable to and binding upon the heirs, executors, administrators, representatives, successors and assigns of Landlord, Tenant and the undersigned. Landlord may, without notice, assign this Guaranty in whole or in part.

H.      In the event that Landlord should institute any suit against the undersigned for violation of or to enforce any of the covenants or conditions of this Guaranty or to enforce any *right of Landlord hereunder, or should the undersigned institute any suit against Landlord* arising out of or in connection with this Guaranty, or should either party institute a suit against the other for a declaration of rights hereunder, or should either party intervene in any suit in which the other is a party to enforce or protect the intervening party's interest or rights hereunder, Landlord shall receive from the undersigned all costs and expenses paid or incurred by Landlord in connection therewith, including, without limitation, the fees of its attorney(s), to be determined by the court and taxed as a part of the costs therein.

I.      The undersigned hereby waives trial by jury in any action, proceeding or counterclaim brought by any person or entity with respect to any matter whatsoever arising out of or in any way connected with:  this Guaranty; the Lease; any liability or obligation of Tenant in any manner related to the Leased Premises; any claim of injury or damage in any way related to the Lease or the Leased Premises; any act or omission of Tenant, its agents, employees, contractors, suppliers, servants, customers or licensees; or any aspect of the use or occupancy of, or the conduct of business in, on or from the Leased Premises. The undersigned shall not impose any counterclaim or counterclaims or claims for set-off, *recoupment or deduction of Rent in any action brought by Landlord against the* undersigned under this Guaranty. The undersigned shall not be entitled to make, and hereby waives, any and all defenses against any claim asserted by Landlord or in any suit or action instituted by Landlord to enforce this Guaranty or the Lease. In addition, the undersigned hereby waives, both with respect to the Lease and with respect to this Guaranty, any and all rights which are waived by Tenant under the Lease, in the same manner as if all such waivers were fully restated herein. The liability of the undersigned under this Guaranty is primary and unconditional.

J.      The undersigned shall not be subrogated, and hereby waives any and all rights of subrogation (if any), to any of the rights of Landlord under the Lease or otherwise, or to or in the Leased Premises thereunder, which may arise by reason of any of the provisions of this Guaranty or by reason of the performance by the undersigned of any of its obligations hereunder. The undersigned shall look solely to Tenant for any recoupment of any payments made or costs or expenses incurred by the undersigned pursuant to this Guaranty.

K.      Any default or failure by the undersigned to perform any of its obligations under this Guaranty shall be deemed to be an immediate default by Tenant under the Lease.

L.      The execution of this Guaranty prior to execution of the Lease shall not invalidate this Guaranty or lessen the obligations of Guarantor(s) hereunder.

IN WITNESS WHEREOF, the undersigned has executed this Guaranty this _____ day of
_____, 20___.

WITNESSES:

-------------------------------------

-------------------------------------

_Jackie Robinson_ (signature)

Jackie Robinson

## ACKNOWLEDGMENT OF INDIVIDUAL GUARANTOR

STATE OF                    )
                           ) ss.
COUNTY OF                  )

On this  18  day of  May  _____, 20 09 , before me personally

appeared  Jackie Robinson  , to me known to be the person(s) described in

and  who  executed  the  foregoing  instrument  and  acknowledged  before  me  that

_____ executed the same as _____ free act and deed.

Notary Public, _____Clark_____ County, _NV_
My Commission expires: ___7/31/10___

Guaranty, Page 3
Philippe Plein/Crystals/05/18/09

# EXHIBIT 3

# EXHIBIT 3

## GUARANTY

Annexed to and forming a part of Lease dated _July 16, 2009_ by and between THE CRYSTALS AT CITYCENTER, LLC, as Landlord, and ELYSIUM RESORTS, INC., as Tenant.

The undersigned, MICHAEL BELLON, an unmarried individual (hereinafter sometimes referred to as the "Guarantor" or "Guarantor(s)"), whose address is 1408 Saintbury Drive, Las Vegas, Nevada 89144, in consideration of the leasing of the Leased Premises described in the annexed Lease ("Lease") to the above named Tenant ("Tenant"), does hereby covenant and agree as follows:

A.    The undersigned does hereby absolutely, unconditionally and irrevocably guarantee the full, faithful and timely payment and performance by Tenant of all of the payments, covenants and other obligations of Tenant under or pursuant to the Lease. If Tenant shall default at any time in the payment of any Rent or any other sums, costs or charges whatsoever, or in the performance of any of the other covenants and obligations of Tenant, under or pursuant to the Lease, then the undersigned, at its expense, shall on demand of said Landlord ("Landlord") fully and promptly, and well and truly, pay all Rent, sums, costs and charges to be paid by Tenant, and perform all the other covenants and obligations to be performed by Tenant, under or pursuant to the Lease, and in addition shall on Landlord's demand pay to Landlord any and all sums due to Landlord, including (without limitation) all interest on past due obligations of Tenant, costs advanced by Landlord, and damages and all expenses (including attorneys' fees and litigation costs), that may arise in consequence of Tenant's default. The undersigned hereby waives all requirements of notice of the acceptance of this Guaranty and all requirements of notice of breach or non-performance by Tenant.

B.    The obligations of the undersigned hereunder are independent of, and may exceed, the obligations of Tenant. A separate action or actions may, at Landlord's option, be brought and prosecuted against the undersigned, whether or not any action is first or subsequently brought against Tenant, or whether or not Tenant is joined in any such action, and the undersigned may be joined in any action or proceeding commenced by Landlord against Tenant arising out of, in connection with or based upon the Lease. The undersigned waives any right to require Landlord to proceed against Tenant or pursue any other remedy in Landlord's power whatsoever, any right to complain of delay in the enforcement of Landlord's rights under the Lease, and any demand by Landlord and/or prior action by Landlord of any nature whatsoever against Tenant, or otherwise.

C.    This Guaranty shall remain and continue in full force and effect and shall not be discharged in whole or in part notwithstanding (whether prior or subsequent to the execution hereof) any alteration, renewal, extension, modification, amendment or assignment of, or subletting, concession, franchising, licensing or permitting under, the Lease.    Without limiting the foregoing, this Guaranty shall be applicable to any obligations of Tenant arising in connection with a termination of the Lease, whether voluntary or otherwise. The undersigned hereby waives notices of any of the foregoing, and agrees that the liability of the undersigned hereunder shall be based upon the obligations of Tenant set forth in the Lease as the same may be altered, renewed, extended, modified, amended or assigned. For the purpose of this Guaranty and the obligations and liabilities of the undersigned hereunder, "Tenant" shall be deemed to include any and all concessionaires, licensees, franchisees, department operators, assignees, subtenants, permittees or others directly or indirectly operating or conducting a business in or from the Leased Premises, as fully as if any of the same were the named Tenant under the Lease.

D.    The undersigned's obligations hereunder shall remain fully binding although Landlord may have waived one or more defaults by Tenant, extended the time of performance by Tenant, released, returned or misapplied other collateral at any time given as security for Tenant's obligations (including other guaranties) and/or released Tenant from the performance of its obligations under the Lease or terminated the Lease.

E.    This Guaranty shall remain in full force and effect notwithstanding the institution by or against Tenant, of bankruptcy, reorganization, readjustment, receivership or insolvency

proceedings of any nature, or the disaffirmance of the Lease in any such proceedings or otherwise.

F.    If this Guaranty is signed by more than one party, or if more than one Guaranty shall be given as security for the performance of Tenant's obligations under the Lease, then the obligations of such parties and any other guarantors shall be joint and several, and the release of one of such guarantors shall not release any other of such guarantors.

G.    This Guaranty shall be applicable to and binding upon the heirs, executors, administrators, representatives, successors and assigns of Landlord, Tenant and the undersigned. Landlord may, without notice, assign this Guaranty in whole or in part.

H.    In the event that Landlord should institute any suit against the undersigned for violation of or to enforce any of the covenants or conditions of this Guaranty or to enforce any right of Landlord hereunder, or should the undersigned institute any suit against Landlord arising out of or in connection with this Guaranty, or should either party institute a suit against the other for a declaration of rights hereunder, or should either party intervene in any suit in which the other is a party to enforce or protect the intervening party's interest or rights hereunder, Landlord shall receive from the undersigned all costs and expenses paid or incurred by Landlord in connection therewith, including, without limitation, the fees of its attorney(s), to be determined by the court and taxed as a part of the costs therein.

I.    The undersigned hereby waives trial by jury in any action, proceeding or counterclaim brought by any person or entity with respect to any matter whatsoever arising out of or in any way connected with:  this Guaranty; the Lease; any liability or obligation of Tenant in any manner related to the Leased Premises; any claim of injury or damage in any way related to the Lease or the Leased Premises; any act or omission of Tenant, its agents, employees, contractors, suppliers, servants, customers or licensees; or any aspect of the use or occupancy of, or the conduct of business in, on or from the Leased Premises.  The undersigned shall not impose any counterclaim or counterclaims or claims for set-off, recoupment or deduction of Rent in any action brought by Landlord against the undersigned under this Guaranty.  The undersigned shall not be entitled to make, and hereby waives, any and all defenses against any claim asserted by Landlord or in any suit or action instituted by Landlord to enforce this Guaranty or the Lease.  In addition, the undersigned hereby waives, both with respect to the Lease and with respect to this Guaranty, any and all rights which are waived by Tenant under the Lease, in the same manner as if all such waivers were fully restated herein.  The liability of the undersigned under this Guaranty is primary and unconditional.

J.    The undersigned shall not be subrogated, and hereby waives any and all rights of subrogation (if any), to any of the rights of Landlord under the Lease or otherwise, or to or in the Leased Premises thereunder, which may arise by reason of any of the provisions of this Guaranty or by reason of the performance by the undersigned of any of its obligations hereunder.  The undersigned shall look solely to Tenant for any recoupment of any payments made or costs or expenses incurred by the undersigned pursuant to this Guaranty.

K.    Any default or failure by the undersigned to perform any of its obligations under this Guaranty shall be deemed to be an immediate default by Tenant under the Lease.

L.    The execution of this Guaranty prior to execution of the Lease shall not invalidate this Guaranty or lessen the obligations of Guarantor(s) hereunder.

DOCID
OAKLAND.1636720.2

IN WITNESS WHEREOF, the undersigned has executed this Guaranty this ____ day of _____, 20___.

WITNESSES:

_____

_____

_____
Michael Bellon

## ACKNOWLEDGMENT OF INDIVIDUAL GUARANTOR

STATE OF          )
                          ) ss.
COUNTY OF      )

On this 18th day of May _____, 20 09 before me personally appeared Michael Bellon _____, to me known to be the person(s) described in and who executed the foregoing instrument and acknowledged before me that _____ executed the same as _____ free act and deed.

_____
Notary Public, Clark County, NV
My Commission expires: 7/31/10

RAEANN POURROY
Notary Public State of Nevada
No. 01-407808-1
My appt. exp. July 31, 2010

DOCID
OAKLAND.1636720.2

# EXHIBIT 4

# EXHIBIT 4



# HONIGMAN

Honigman Miller Schwartz and Cohn LLP
Attorneys and Counselors

David G. London

(248) 566-8464
Fax: (248) 566-8465
dlondon@honigman.com

*Via FedEx*

## NOTICE OF DEFAULT

November 18, 2009

Elysium Resorts, Inc.
4560 S. Decateur Boulevard, Suite 301
Las Vegas, Nevada 89103

**Re:**  *Lease, dated July 16, 2009, by and between The Crystals at CityCenter, LLC, as Landlord and Elysium Resorts, Inc., as Tenant, d/b/a "Philippe Plein", for Leased Premises (Space 270) located in Crystals, Clark County, Nevada*

Dear Sir/Madam:

As you are aware, this firm represents the Landlord at the above-referenced Retail Area. Reference is made to Section 5.01 of the Data Sheet of the Lease and to Section IV.B.1. of Exhibit B.

We have been advised that Landlord's on-site personnel were informed by Tenant's representatives that Tenant is not moving forward with construction of Tenant's Work in the Leased Premises and that Tenant wanted to explore the possibilities of relocating to the enclosed retail mall portion of the project.

This letter shall constitute notice to Tenant of Tenant's default for such failure. You are reminded that Landlord may exercise rights and remedies available under Article XIX of the Lease and at law or equity including, without limitation, withdrawal of Landlord's obligation to pay the construction allowance.

Landlord will not agree to lease new premises to Tenant other than those which Tenant is obligated to construct and operate in.

Govern your actions accordingly.

Very truly yours,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

David G. London

cc:    Frank Visconti
       Bruce Aguilera, Esq.
       John McManus, Esq.
       Diana Gionet
       Farid Matraki
       Rick Strauss
       Jan Balint
       Patrick Crockett
       Michael Bellon
              1408 Saintbury Drive
              Las Vegas, NV 89144
       Jackie Robinson
              6325 Harrison Drive #1
              Las Vegas, NV 89120

---

38500 Woodward Avenue · Suite 100 · Bloomfield Hills, Michigan 48304-5048
*Detroit · Lansing · Oakland County · Ann Arbor · Kalamazoo*

OAKLAND.1713401.1

# EXHIBIT 5

# EXHIBIT 5

## FIRST MODIFICATION OF LEASE AGREEMENT

THIS AGREEMENT, made and entered into this _11th_ day of _Felesury_ 20*10*, by and between **THE CRYSTALS AT CITYCENTER, LLC**, as Landlord, and **ELYSIUM RESORTS, INC.**, as Tenant.

WITNESSETH:

WHEREAS, Landlord and Tenant did heretofore make and enter into a certain Lease Agreement, dated July 16, 2009, for a retail business to be operated under the trade name "Philippe Plein", covering premises identified as Space No. "270", in the Retail Area commonly known as CityCenter, located in the County of Clark, State of Nevada, which premises are more particularly described in said Lease;

WHEREAS, delivery of possession of the Leased Premises to Tenant has occurred; and

WHEREAS, the parties hereto are presently desirous of modifying said Lease in the manner hereinafter set forth.

NOW, THEREFORE, for and in consideration of the covenants herein contained and other good and valuable considerations, the receipt and adequacy of which are confessed and acknowledged by each of the parties hereto, it is agreed as follows:

1.     **Data Sheet, Section 1.01. Leased Premises**: Paragraph (1) of the Data Sheet shall be amended to read as follows:

> "Space Number 270, located on level 2146, having an irregular shape and consisting of approximately four thousand one hundred forty-four (4,144) square feet of leasable floor area, together with "storage premises" initially described as Space Number 280, having an irregular shape and consisting of approximately one thousand nine hundred sixteen (1,916) square feet of leasable floor area.
>
> <u>Note</u>:  For purposes of determining charges payable by Tenant under Sections 2.05, 8.03 and 16.03 of this Lease and for purposes of determining the construction allowance owing to Tenant, the floor area of the storage premises shall not be deemed to be part of the floor area of the Leased Premises."

2.     **Data Sheet, Section 1.02. Commencement Date**: The Commencement Date set forth in Paragraph (2) of the Data Sheet shall be changed to "June 15, 2010."

3.     **Data Sheet, Section 2.01. Minimum Rent**: Paragraph (5) of the Data Sheet shall be amended to read as follows:

> "Three Hundred Six Thousand Six Hundred Fifty-Six and 00/100ths Dollars ($306,656.00) per annum, payable in equal consecutive monthly installments of Twenty-Five Thousand Five Hundred Fifty-Four and 67/100ths Dollars ($25,554.67), subject to increase under the provisions of Section 2.04 of the Standard Form.
>
> **Storage Premises Minimum Rent**:  In addition to the above-stated Minimum Rent, Tenant shall Minimum Rent for the storage premises of

1

1/29/2010



> Twenty-Eight Thousand Seven Hundred Forty and 00/100ths Dollars ($28,740.00) per annum, payable in equal consecutive monthly installments of Two Thousand Three Hundred Ninety-Five and 00/100ths Dollars ($2,395.00), subject to increase under the provisions of Section 2.04 of the Standard Form."

4.    **Data Sheet, Section 2.02. Percentage Rent**: Paragraph (6) of the Data Sheet shall be amended to read as follows:

> "Eight percent (8%) (the "percentage rent factor") of Gross Sales made during each Lease Year of the Term hereof in excess of Three Million Eight Hundred Thirty-Three Thousand Two Hundred and 00/100ths Dollars ($3,833,200.00) (the "Breakpoint")."

5.    **Data Sheet, Section 7.01. Permitted Use**: The following shall be inserted at the end of Paragraph (10) of the Data Sheet: "Tenant may also sell apparel and apparel accessories provided all apparel and apparel accessories shall be under the Philippe Plein label. At least one-half (1/2) of the sales area must be devoted to the sale of furniture."

6.    Tenant shall immediately contact Landlord and develop (with Landlord) a schedule of Tenant's plan submittal and construction related milestone dates which Tenant shall strictly adhere to.

7.    Exhibit A, pages 2 and 3 attached hereto shall replace Exhibit A, page 2 attached to the Lease.

8.    Except as expressly modified in this Agreement, all of the terms, covenants and conditions of said Lease shall remain in full force and effect and are hereby ratified and confirmed.

9.    Each of the parties hereto severally agree that they have read this Agreement, that they understand the contents thereof, and that each is signing this Agreement as his or her own free act and deed, without any persuasion or coercion on the part of anyone, and with full advice of counsel.

10.    Tenant hereby agrees that Landlord is not in default of any of Landlord's obligations under the Lease nor is Tenant aware of any circumstances which, with the passage of time, could result in Landlord being in default under the provisions of the Lease.

11.    Tenant affirms that it has not relied upon any statements or information, oral or written, relating to Landlord, the Leased Premises, the Retail Area or the Development other than those which are contained within the written terms of the Lease and its exhibits and that the written terms of the Lease and its exhibits set forth all of the covenants, promises, agreements, conditions and undertakings between Landlord and Tenant concerning Landlord, the Leased Premises, the Retail Area and the Development.

2

1/29/2010

OAKLAND.1749175.3



IN WITNESS WHEREOF, the parties hereto have set their hand and seal the day and year first above written and declare this First Modification of Lease Agreement to be binding on them, their respective successors and permitted assigns.

IN THE PRESENCE OF:

LANDLORD:
THE CRYSTALS AT CITYCENTER, LLC

By:_____
Its: Representative

_____

TENANT:
ELYSIUM RESORTS, INC.

By:_____
And:_____

_____

## AFFIRMATION OF GUARANTORS

For good and valuable consideration, the undersigned does hereby affirm that the Guaranty attached to the Lease described in the preamble hereof is binding with respect to this Agreement and in all respects remains in full force and effect.

IN THE PRESENCE OF:

_____
Jackie Robinson, a married individual

_____
Michael Bellon, an unmarried individual

Dated:_____

3

OAKLAND.1749175.2

1/26/2010

IN WITNESS WHEREOF, the parties hereto have set their hand and seal the day and year first above written and declare this First Modification of Lease Agreement to be binding on them, their respective successors and permitted assigns.

IN THE PRESENCE OF:

LANDLORD:
THE CRYSTALS AT CITYCENTER, LLC

By:_____

Its: Representative

TENANT:
ELYSIUM RESORTS, INC.

By:_____

And:_____

## AFFIRMATION OF GUARANTORS

For good and valuable consideration, the undersigned does hereby affirm that the Guaranty attached to the Lease described in the preamble hereof is binding with respect to this Agreement and in all respects remains in full force and effect.

IN THE PRESENCE OF:

_____

Jackie Robinson, a married individual

_____

Michael Bellon, an unmarried individual

Dated:_____

3

1/29/2010

## ACKNOWLEDGMENT OF LANDLORD

STATE OF Nevada )
) ss.
COUNTY OF Clark )

On this 5th day of February , 20 10 , before me personally appeared Frank Visconti to me known to be the person who executed the foregoing Agreement and acknowledged before me that he was duly authorized and did execute same on behalf of THE CRYSTALS AT CITYCENTER, LLC.

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
SARA GARCIA
Appt. No. 97-2870-1
My Appt. Expires Sept. 5, 2013

Notary Public, _____ County, _____
My Commission expires:

## ACKNOWLEDGMENT OF TENANT

STATE OF )
) ss.
COUNTY OF )

On this 1st day of February , 20 10 , before me personally appeared Jackie Robinson and Michael Bellon , to me personally known, who, being by me duly sworn, did each for himself say that he is, respectively, the _____ and _____ of ELYSIUM RESORTS, INC., the entity named in and which executed the within instrument, and that said instrument was signed and sealed in behalf of said entity by authority of its board; and said Jackie Robinson and Michael Bellon acknowledged before me said instrument to be the free act and deed of said entity.

NOTARY PUBLIC
DAWN TRANQUILLO
STATE OF NEVADA · COUNTY OF CLARK
MY APPOINTMENT EXP. JUNE 5, 2013
No: 93-3423-1

Notary Public, Clark County, Nevada
My Commission expires: June 5, 2013

4

OAKLAND.1749175.3

1/29/2010



## ACKNOWLEDGMENT OF GUARANTOR

STATE OF _____ )
                       ) ss.
COUNTY OF _____ )

On this 1st day of February _____, 20 10, before me personally appeared Jackie Robinson, to me known to be the person(s) described in and who executed the foregoing instrument and acknowledged before me that _____hl_____ executed the same as ___a___ free act and deed.

Notary Public, Clark County, Nevada
My Commission expires: June 5, 2013

DAWN TRANQUILLO
NOTARY PUBLIC
STATE OF NEVADA · COUNTY OF CLARK
MY APPOINTMENT EXP. JUNE 5, 2013
No: 93-3423-1

STATE OF _____ )
                       ) ss.
COUNTY OF _____ )

On this 1st day of February _____, 20 10 before me personally appeared Michael Bellon, to me known to be the person(s) described in and who executed the foregoing instrument and acknowledged before me that _____he_____ executed the same as ___a___ free act and deed.

Notary Public, Clark County, Nevada
My Commission expires: June 5, 2013

DAWN TRANQUILLO
NOTARY PUBLIC
STATE OF NEVADA · COUNTY OF CLARK
MY APPOINTMENT EXP. JUNE 5, 2013
No: 93-3423-1

OAKLAND.1749175.3

1/29/2010

EXHIBIT A



| PHILIPPE PLEIN | |
|---|---|
| RETAIL 270 (2146'-6") | 4,144 SF |
| TOTAL | 4,144 SF |

EXHIBIT #:  845.270.03

GENERAL NOTE: THIS DOCUMENT PREPARED BY THE LANDLORD IS FOR LEASE
DOCUMENTATION PURPOSES ONLY. TO REFLECT THE LOCATION OF THE TENANT SPACE.
EXACT DIMENSIONS, CONFIGURATION AND/OR SQUARE FOOTAGE SHOWN MAY BE
SUBJECT ACTUAL CONDITIONS.  FIELD CONDITIONS OF THE LEASE PREMISES MUST BE
VERIFIED ON SITE BY THE TENANT.  OWNER AND ITS CONSULTANTS DO NOT ASSUME
ANY RESPONSIBILITY FOR ANY ERRORS OR OMISSIONS

LEVEL 2146'-6"

| CREATED: | 02/20/2009 |
|---|---|
| REVISED: | 04/20/2009 |
| REVISED: | 12/14/2009 |

BASED ON: CURRENT PLANS 12/14/2009

CITYCENTER

A AAI

EXHIBIT A
PAGE 1 of 1

Exhibit A, page 2
1/29/2010



PHILIPPE PLEIN

| | |
|---|---|
| STORAGE 280 (2146'-6") | 1,916 SF |
| TOTAL | 1,916 SF |

EXHIBIT #:  845.280.01

LEVEL 2146'-6"

EXHIBIT A
PAGE 1 of 1

OAKLAND.1749175.3



# EXHIBIT 6

# EXHIBIT 6



# HONIGMAN

Honigman Miller Schwartz and Cohn LLP
Attorneys and Counselors

David G. London

(248) 566-8464
Fax: (248) 566-8465
dlondon@honigman.com

*Via FedEx*

## NOTICE OF DEFAULT

April 5, 2010

Elysium Resorts, Inc.
4560 S. Decateur Boulevard, Suite 301
Las Vegas, Nevada 89103

**Re:** *Lease, dated July 16, 2009, by and between The Crystals at CityCenter, LLC, as Landlord and Elysium Resorts, Inc., as Tenant, d/b/a "Philippe Plein", for Leased Premises (Spaces 270 and 280) located in CityCenter, Clark County, Nevada*

Dear Sir/Madam:

As you are aware, this firm represents the Landlord under the above-referenced Lease which was modified by a First Modification of Lease Agreement dated February 11, 2010 (the "First Modification").

Paragraph 6 of the First Modification provides that:

> "Tenant shall immediately contact Landlord and develop (with Landlord) a schedule of Tenant's plan submittal and construction related milestone dates which Tenant shall strictly adhere to."

In addition, under paragraph 2 of the First Modification, Tenant is required to complete Tenant's Work in the Leased Premises, and to open for business, no later than June 15, 2010.

Furthermore, Exhibit B, Section V.A.1. requires Tenant to commence construction of leasehold improvements in time to open by June 15, 2010.

To date, Tenant has not contacted Landlord to develop a plan submittal and construction related milestone schedule, has not submitted any plans for Tenant's Work to Landlord and has failed to respond to Landlord's request that Tenant inform Landlord of Tenant's plan submittal and construction related progress.

This letter shall constitute notice to Tenant by Landlord that Tenant is in default under the Lease for failure to develop (with Landlord) a plan submittal and construction related milestone schedule, to submit plans to Landlord for Landlord's Work, and to commence construction in time for Tenant to open by June 15, 2010.

Such defaults jeopardize Tenant's rights under the Lease including (without limitation) Landlord's obligation to pay the construction allowance to Tenant. If Tenant fails to timely complete Tenant's Work and open for business, then Landlord intends to impose additional

---

38500 Woodward Avenue · Suite 100 · Bloomfield Hills, Michigan 48304-5048
*Detroit · Lansing · Oakland County · Ann Arbor · Kalamazoo*

OAKLAND.1804409.1

# HONIGMAN

April 5, 2010
Page 2

remedies granted under the Lease and at law and equity including (without limitation) charging Tenant the liquidated amounts set forth in Section 1.03 of the Lease.

Also be reminded, that Tenant's Guarantors, Jackie Robinson and Michael Bellon, are fully and primarily liable for Tenant's obligations under the Lease and shall be held responsible for any failure by Tenant to comply with the terms of the Lease.

Govern your actions accordingly.

Very truly yours,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

David G. London

cc:     Frank Visconti
        Bruce Aguilera, Esq.
        Diana Gionet
        Farid Matraki
        Rick Strauss
        Jan Balint
        Geri Harris
        Patrick Crockett
        Michael Bellon
                1408 Saintbury Drive
                Las Vegas, NV 89144
        Jackie Robinson
                6325 Harrison Drive #1
                Las Vegas, NV 89120
        Lance Maningo, Esq. (lam@bellonandmaningo.com)

38500 Woodward Avenue · Suite 100 · Bloomfield Hills, Michigan 48304-5048
*Detroit · Lansing · Oakland County · Ann Arbor · Kalamazoo*

OAKLAND.1804409.1

# EXHIBIT 7

# EXHIBIT 7



# HONIGMAN

Honigman Miller Schwartz and Cohn LLP
Attorneys and Counselors

David G. London

(248) 566-8464
Fax: (248) 566-8465
dlondon@honigman.com

*Via FedEx*

## NOTICE OF DEFAULT

June 18, 2010

Elysium Resorts, Inc.
4560 S. Decateur Boulevard, Suite 301
Las Vegas, Nevada 89103

*Re:*    *Lease, dated July 16, 2009, by and between The Crystals at CityCenter, LLC, as Landlord and Elysium Resorts, Inc., as Tenant, d/b/a "Philippe Plein", for Leased Premises (Spaces 270 and 280) located in CityCenter, Clark County, Nevada*

Dear Sir/Madam:

As you are aware, this firm represents the Landlord at the above-referenced Retail Area. Reference is made to Sections 1.02, 1.03 and 5.01 and Article XIX of the Lease.

Tenant has failed to complete Tenant's Work and open for business in the Leased Premises and an Event of Default has occurred.

This letter shall constitute notice to Tenant of Tenant's Event of Default. As a result Landlord may exercise rights and remedies available under the Lease and at law or equity.

Very truly yours,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

David G. London

cc:    Frank Visconti
       Bruce Aguilera, Esq.
       Diana Gionet
       Farid Matraki
       Jan Balint
       Geri Harris
       Patrick Crockett
       Michael Bellon
            1408 Saintbury Drive
            Las Vegas, NV 89144
       Jackie Robinson
            6325 Harrison Drive #1
            Las Vegas, NV 89120
       Lance Maningo, Esq. (lam@bellonandmaningo.com)

38500 Woodward Avenue · Suite 100 · Bloomfield Hills, Michigan 48304-5048
*Detroit · Lansing · Oakland County · Ann Arbor · Kalamazoo*

OAKLAND.1847826.1

# EXHIBIT 8

# EXHIBIT 8



**CITYCENTER**
LAS VEGAS

BRUCE A. AGUILERA
Vice President and General Counsel

*Via FedEx*

# NOTICE OF DEFAULT

October 27, 2010

Elysium Resorts, Inc.                    Michael Bellon
4560 S. Decateur Boulevard, Suite 301    1408 Saintbury Drive
Las Vegas, Nevada 89103                  Las Vegas, NV 89144

Jackie Robinson
6325 Harrison Drive #1
Las Vegas, NV 89120

*Re:  Lease, dated July 16, 2009, by and between The Crystals at CityCenter, LLC, as Landlord and Elysium Resorts, Inc., as Tenant, d/b/a "Philippe Plein", for Leased Premises (Spaces 270 and 280) located in CityCenter, Clark County, Nevada, as modified by First Modification of Lease Agreement dated February 11, 2010*

Dear Sir/Madam:

Reference is made to Sections 1.02, 1.03 and 5.01 and Article XIX of the Lease and to the provisions of the First Modification of Lease Agreement.

Tenant has failed to complete Tenant's Work and open for business in the Leased Premises and an Event of Default has occurred for such failures. Landlord's notice of default was previously sent by our attorney David London on June 18, 2010.

Tenant has failed to make payment of rent and charges from and after June 15, 2010 and an Event of Default has occurred for such failure. The amounts of rent and charges owing to Landlord as of this date are set forth on the invoice attached hereto.

This letter shall constitute notice to Tenant of Tenant's Event of Default. Landlord intends to exercise its rights under the Lease including, without limitation, recovery from Tenant and from Tenant's Guarantors of the delinquent amounts currently owing to Landlord plus the entire future rents and charges which Tenant is contractually obligated to pay to Landlord under the terms of the Lease for the remainder of the Term.



Landlord's local attorneys are now actively involved under my direction. It would be prudent for you to have your own attorney contact me immediately (i.e. within five days) if Tenant wishes to settle this matter short of litigation in the courts.

Very truly yours,

THE CRYSTALS AT CITYCENTER, LLC

Bruce A. Aguilera
Vice President & General Counsel
Bellagio, CityCenter & ARIA

cc:    Frank Visconti
       Diana Gionet
       Farid Matraki
       Jan Balint
       Geri Harris
       Patrick Crockett
       David G. London, Esq.
       Lance Maningo, Esq. (lam@bellonandmaningo.com)

T 702 693 7200    F 702 693 7245
baguilera@bellagioresort.com
P.O. Box 7760   Las Vegas, Nevada 89177-7760
citycenter.com
2
CITYCENTER
LAS VEGAS
An MGM Resorts International Development

**Error! Unknown document property name.**